# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action Number |
| | ) | 07-00238-01-CR-W-HFS |
| Jamil V. Mackey, | ) | |
| | ) | |
| Defendant. | ) | |

## Report and Recommendation

Pending before the Court is the MOTION TO SUPPRESS EVIDENCE WITH SUGGESTIONS filed October 29, 2007 (Doc. #20) by defendant Jamil V. Mackey ("Mackey"). On November 28, 2007, the undersigned held an evidentiary hearing on Mackey's motion. Mackey was present and was represented by his counsel, Laine Cardarella. The government was represented by Assistant United States Attorney Jess Michaelsen. At the evidentiary hearing, the government called three witnesses: Sergeant Gregory Satter, Sergeant Matthew Gardner and Detective Craig Horalek all with the Kansas City Missouri Police Department. Mackey called no witnesses. Additionally, the following exhibits were admitted into evidence:

| Number | Description |
|---|---|
| Gov't. #1 | Photograph of gun |
| Gov't. #2 | *Miranda* waiver |
| Gov't. #3 | Statement of Mackey |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

**PROPOSED FINDINGS OF FACT**

1. On June 23, 2007, Sgt. Satter and Sgt. Gardner were on duty with the Kansas City Missouri Police Department in the area of the Brush Creek Village Apartments. Tr. at 4, 28.

2. On that date, the officers were contacted by the manager of the Brush Creek Village Apartments with complaints of possible drug activity at 1710 Concorde Court, Apartment 104 – specifically the manager was concerned that a black male was selling drugs out of the apartment. Tr. at 4, 17-18, 28-29.

3. After receiving this call, Sgt. Satter and Sgt. Gardner responded to the apartment complex where the manager pulled the lease file for the apartment and shared it with the officers. Tr. at 5.

4. The officers learned that a female – Crystal Brown – was the sole leaseholder of the one-bedroom apartment. Tr. at 5-7, 29.

5. The officers then ran a computer check on Ms. Brown's name and found out that she was wanted on an outstanding felony warrant. Tr. at 5-8, 19, 29.

6. The officers also received some information from a maintenance man that there might be another individual in the apartment who was not listed on the lease. Tr. at 6.

7. The officers were aware that it was a practice of some tenants to not inform a landlord of everyone who might be living in an apartment because the additional individuals might not pass background checks, particularly in this apartment complex where the manager took a zero-tolerance approach to criminal activity. Tr. at 6-7.

8. The officers were also aware that the presence of such unlisted, undisclosed residents could constitute a violation of the lease agreement and, thus be of interest to the apartment manager who usually sought an immediate eviction. Tr. at 6-7, 18.

9. When the officers knocked on the door for Apartment 104, Ms. Brown opened the door but the officers could also see a black male (later identified as Mackey) in the apartment with her. Tr. at 8-9, 19, 29-30.

10. The officers then arrested Ms. Brown, handcuffed her and had her sit down on a chair in the apartment. Tr. at 9, 30.

11. Thereafter, Mackey became "upset" and "agitated" and, because of his size and demeanor toward the officers, Mackey was handcuffed and asked to sit down on the couch while the officers attempted to verify names. Tr. at 9, 20, 30-33.

12. Mackey was asked for identification but responded that he did not have documents but said that his name was "Jamil Shakur." Tr. at 11, 20, 31, 34-35.

13. Sgt. Satter then began asking Mackey questions (*e.g.*, first name, middle initial, date of birth, Social Security number) and, in Sgt. Satter's opinion, Mackey was not wholly truthful in that he was not able to provide a previous address. Tr. at 11, 20.

14. The officers also became suspicious when Mackey indicated that he had previously been arrested, but a computer check on his name revealed no prior criminal record. Tr. at 12, 20, 31.

15. Thereafter, Sgt. Satter took Ms. Brown into the hallway outside the apartment and asked about the man's identity. Tr. at 12, 20-21, 31-32.

16. Ms. Brown said the man's name was "Jamil Shakur." Tr. at 12-13, 21.

17. Sgt. Satter asked Ms. Brown if there was anything in the apartment that would verify the identity and she indicated that there was probably some paperwork in the bedroom, particularly in a blue tote in the bedroom. Tr. at 12-13.

18. Sgt. Satter then asked Ms. Brown if it was okay to go into the bedroom and look for something with the man's name on it. Tr. at 12-13.

19. Ms. Brown said that Sgt. Satter could go into the bedroom and look for something with the man's name on it. Tr. at 12-13, 24.

20. Sgt. Satter then took Ms. Brown back into the apartment, sat her d back down on the chair and proceeded to enter the bedroom. Tr. at 13, 32.

21. Sgt. Satter did not seek Mackey's permission to enter the bedroom and did not discuss Ms. Brown's consent with Mackey. Tr. at 23, 32.

22. Sgt. Satter then searched the bedroom looking for identification documents or other paperwork. Tr. at 13, 15-16.

3

23. After looking in the blue tote and not finding anything, Sgt. Satter lifted up the mattress and observed a gun, a bag of marijuana and a marijuana pipe. Tr. at 13-14.

24. Then Sgt. Satter began moving the sheets on the unmade bed and saw some paperwork with the name "Jamil Mackey" on it. Tr. at 14.

25. Sgt. Satter then ran a computer check on that name and discovered that there was a criminal record, more particularly, Sgt. Satter learned that Mackey was a felon. Tr. at 14, 33.

26. Sgt. Satter then placed Mackey under arrest for being a felon in possession of a firearm. Tr. at 14, 32.[1]

---

[1] In addition, the Government offered evidence at the suppression hearing that, in a statement given to law enforcement officers subsequent to her arrest (and after *Miranda* rights had been given), Ms. Brown was asked "Did you give the officers consent to look in your bedroom of the apartment?" and Ms. Brown responded "Yes." Tr. at 39, 41, Govt. Ex. #5. The defendant argued that this evidence was not proper in light of the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 42 (2004). In *Crawford*, the Court considered the scope of the Confrontation Clause in limiting the use of "testimonial hearsay" against criminal defendants. The Court held that statements taken by police officers in the course of interrogations are testimonial and, specifically as to that case, the declarant's recorded statement, knowingly given in response to police questioning, qualified under the definition of testimonial hearsay. *Id.* at 53, n.4. At the suppression hearing the parties indicated that they were unsure of the application of *Crawford* to a suppression hearing and suggested that briefing might be forthcoming on the issue. In light of the fact that the parties have not provided additional briefing, and considering that the disputed evidence is not necessary to this ruling, the Court will not include the evidence of Ms. Brown's statement as part of the proposed findings of fact.

4

**PROPOSED CONCLUSIONS OF LAW**

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. CONST. amend. IV. As made clear in the Fourth Amendment, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222 (1960). Nonetheless, as the United States Supreme Court pointedly noted over one hundred years ago:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

*Union Pacific Railroad Co. v. Botsford*, 141 U.S. 250, 251 (1891).

In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. However, over the years, many exceptions to the warrant requirement have been recognized. Of importance to this case, it is established law that an exception to the warrant requirement of the Fourth Amendment is consent to search. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).

It is well settled that "[v]alid consent may be given by a third party who possesse[s] common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Hilliard*, 490 F.3d 635, 639 (8th Cir. 2007). In this case, as the leaseholder on and occupant of the apartment, Ms. Brown had the authority to consent to the search of the bedroom. As such, the law enforcement officers were entitled to lawfully search the bedroom without the necessity of obtaining a warrant.

5

Mackey raises two issues in objecting to the consent that the Court will briefly address. The first argument is that Ms. Brown gave only a limited consent to permit a search only of Mackey's blue bin (aka tote) in the bedroom. The Court, however, has made factual findings contrary to this claim. Sgt. Satter's testimony during direct-examination at the suppression hearing, as well as the report he prepared contemporaneously with the incident, demonstrate that Ms. Brown gave the officer consent to search "the bedroom" without meaningful restriction.[2] During cross-examination at the suppression hearing, Sgt. Satter did respond to questions that seemed to imply that the consent was more limited.[3] While the Court has considered this testimony, it does not find it dispositive. The testimony of Sgt. Satter during cross-examination seems to be a product of confusion between questioner and answerer and does not undermine other more straightforward and unambiguous evidence regarding Ms. Brown's consent.

In addition, Mackey argues that the officers "intentionally bypassed" Mackey in obtaining Ms. Brown's consent. To that end, the Eighth Circuit has suggested that "[the] police may not rely on a third party's consent to 'intentionally bypass' a person who is present and has a privacy interest in the premises that is superior to that of the consenting third party and who objects to the search." *United States v. Brokaw*, 985 F.2d 951, 953 (8th Cir. 1993). At the suppression hearing, the parties engaged in a thoughtful and interesting discussion as to whether the "intentional bypass" rule is invoked where, as here, the defendant was not aware that a third party had given consent and was not aware that a search was being undertaken. That discussion is, however, moot under the facts of this case.

---

[2]Tr. at 12-13 and 24-25.

[3]Tr. at 21-22.

The "intentional bypass" rule only has applicability to a search of premises where the defendant has a privacy interest that is superior to that of the consenting party. While it may be arguable that Mackey had such a superior interest as to his "blue bin," he did <u>not</u> have a superior interest as to the common areas of this apartment (including the bed in the bedroom). At best, Mackey can argue that a search of the "blue bin" was an effort to intentionally bypass his consent. In this case, however, the incriminating evidence was located under the mattress in the bedroom. This was an area over which Ms. Brown (as the sole leaseholder and an occupant) was authorized to give consent for a search.

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** Mackey's MOTION TO SUPPRESS EVIDENCE WITH SUGGESTIONS filed October 29, 2007 (Doc. #20).

Counsel are reminded that each has 10 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                                        */s/ John T. Maughmer*
                                                        **John T. Maughmer
United States Magistrate Judge**